UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DON TERRELL, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. H-11-1418 |
| | § | |
| RICK THALER, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

Don Terrell, a Texas inmate proceeding *pro se* and *in forma pauperis*, filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254. (Docket Entry No. 1). Respondent Rick Thaler filed a motion for summary judgment, (Docket Entry No. 13), and Terrell filed a response, (Docket Entry No. 16). After reviewing the record, the pleadings, and the applicable law, including the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") deferential standard of review, the Court will grant Respondent's motion for summary judgment and deny Terrell's petition. The Court will not certify any issue for appeal. The Court sets forth the reasons for its adjudication below.

### BACKGROUND

Terrell drove his car past his fourteen-year-old victim at around 8:00 a.m. on October 15, 2003, as she waited for the school bus. After passing her, he slowed his vehicle and then turned onto a nearby street. Moments later, he again passed by the victim, this time stopping. The frightened girl looked inside his open car window and saw Terrell masturbating. Because Terrell's car blocked the path to her home, the victim could not flee. Terrell moved his car forward as the victim's sister exited their nearby home and yelled "Hi." The victim went home, called 911, and reported Terrell's license plate number.

Bryan Police Department Detective Kelley Davis went to the victim's home and took a report. Detective Davis learned that the car the victim had seen was registered to Terrell's mother-in-law, but that Terrell's wife often drove it. Detective Davis found the car at Terrell's house, but he was not at home. Detective Davis returned to the police station and, as she was preparing a report, Terrell arrived. Another police officer interviewed Terrell, though Detective Davis listened to the interview. Terrell said that he had heard from his mother-in-law that the police were looking for him and came to the station to clear his name. He admitted that he had driven the car that morning, that he saw children waiting at the bus stop, and that he saw a girl who resembled the victim (which raised the police officer's suspicion because no one had described the victim to Terrell). Terrell disclaimed exposing himself. He never requested legal counsel during the interview. Although both audiotape and videotape captured the interview, the police later could not find the recordings. Terrell's federal habeas claims arise from the lost evidence.

Later that day, the victim identified Terrell from a photo lineup. Although the police made an audio tape of the line-up identification, they also could not find that recording. The State of Texas charged Terrell with indecency with a child, exposure. *See* TEX. PENAL CODE ANN. § 21.11(a)(2)(A). This, however, was not Terrell's first sexual offense. In 1982, a jury had convicted Terrell of aggravated rape. Terrell was still on parole for that crime at the time of the instant offense. On December 9, 2003, the State reindicted Terrell, adding an enhancement paragraph relating to his earlier felony sexual crime.

Terrell stood trial in *State of Texas v. Don Terrell*, Cause No. 03-04527-CRF-85, in the 85th Judicial District Court of Brazos County, Texas. On February 7, 2005, trial began.[1] Because the police could not find the audio and video recordings of Terrell's police interview,

---

[1] An earlier trial ended in a hung jury.

the State called Detective Davis to relate briefly the statements Terrell made. Tr. Vol. 17 at 132-34. Also, because the police officers could not find the audiotape made while the victim identified Terrell from photo array, Detective Davis also described how she picked Terrell out of a photo line-up. Tr. Vol. 17 at 180. The victim also testified at trial, identifying Terrell and describing how he exposed himself. Tr. Vol. 17 at 27-28, 34.

After the parties had rested, the defense moved to dismiss the case because of the lost recordings. Tr. Vol. 18 at 5-6. Admitting that "there is no indication that there was some intentional misappropriation or exfoliation [sic] of this evidence, it was just lost," trial counsel asked the trial court to dismiss the case under the Texas and United States Constitutions. Tr. Vol. 18 at 6. The trial court summarily denied the motion. Tr. Vol. 18 at 7. The jury found Terrell guilty as charged. Terrell had elected for the trial judge to assess punishment. Given his prior sexual offense, the trial court sentenced Terrell to thirteen years' imprisonment.

On direct appeal, Terrell again argued that the trial court should have dismissed his case because the loss of the evidence violated his rights under the federal and state constitutions. Terrell emphasized that Article 1, Section 19 of the Texas Constitution (the due course of law provision) broadly requires the State to preserve evidentiary material. At that point in time, the Texas intermediate appellate courts had been considering whether the due course of law provision granted a criminal defendant greater rights than the federal constitution's due process clause. Shortly after Terrell's conviction, an intermediate appellate court in *Pena v. State*, 226 S.W.3d 634, 652 (Tex. App.–Waco 2007, no pet. h) held that the state-law protections exceeded federal constitutional guarantees. Applying *Pena* to Terrell's claim, the intermediate court found that the various factors – no bad faith by the State in the loss of evidence, the minor exculpatory value of the lost evidence, and the fact that the victim's testimony alone sufficiently sustained his

conviction – pointed to no state constitutional violation. The intermediate court of appeals affirmed Terrell's conviction and sentence *Terrell v. State*, 228 S.W.3d 343 (Tex. App. –Waco 2007).

After granting discretionary review, the Texas Court of Criminal Appeals remanded the case for consideration of a specific procedural issue: whether "Terrell's specific due course of law complaint was timely and specific under Texas Rule Appellate Procedure 33.1" *Terrell v. State*, PDR No. 0922-07 (Tex. Crim. App. April 8, 2009). On remand, the intermediate appellate court applied TEX. R. APP. P. 33.1 and found that "Terrell did not argue before the trial court that the Texas Constitution provides greater protection than the federal Due Process Clause. Thus, he failed to preserve his complaint that the due course of law provides greater protection for appellate review." *Terrell v. State*, 311 S.W.3d 561, 564 (Tex. App. –Waco 2007, pet. ref'd). In other words, Terrell's claim ran afoul of Texas' long-held contemporaneous-objection rule. *See Evans v. Cockrell*, 285 F.3d 370, 373 (5th Cir. 2002) (linking TEX. R. APP. P. 33.1 and Texas' judicial contemporaneous-objection rule). The Court of Criminal Appeals refused a petition for discretionary review of that ruling. *Terrell v. State*, PDR No. 0058-10 (Tex. Crim. App. May 5, 2010).

Terrell subsequently sought state habeas review. In his state habeas application, Terrell argued that trial counsel provided ineffective representation by not making a sufficient objection to preserve error for appeal. After trial counsel submitted an affidavit, the lower court issued brief findings recommending that the Court of Criminal Appeals deny relief. State Habeas Record at 53. The state habeas court found that trial counsel's representation "fell with the recognized standard for competent attorneys" and that Terrell had not "shown any prejudice as a

result of any alleged errors or omission by his trial counsel." The Texas Court of Criminal Appeals adopted the lower court's findings and denied relief. Federal review followed.

Terrell has filed a petition for a federal writ of habeas corpus and a memorandum of law. (Docket Entry Nos. 1 and 2). Terrell's petition raises the following two grounds for relief:

(1) The trial court improperly denied his motion to dismiss because the police department failed to preserve the audio and video tape recordings of his police interview. Trial counsel provided ineffective representation by failing to preserve error with regard to the missing evidence.

(2) The loss of the audio and video tapes deprived Terrell of his Confrontation Clause rights.

Respondent filed a motion for summary judgment. (Docket Entry No. 13). Respondent argues that Terrell procedurally defaulted federal consideration of his claims by inadequately presenting them to the state courts. In addition, Respondent argues that the AEDPA standards and prior jurisprudence foreclose federal relief on all grounds. Terrell has filed a reply. (Docket Entry No. 16).[2] This matter is now ripe for adjudication.

## STANDARD OF REVIEW

The writ of habeas corpus provides an important, but limited, examination of an inmate's conviction and sentence. *See Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 787 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions."). The AEDPA, which "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt," codifies the traditional principles of finality, comity, and federalism that underlie the limited scope of federal habeas review. *Renico v. Lett*, ___ U.S. ___, 130 S. Ct. 1855, 1862 (2010) (quotations

---

[2] In his reply, Terrell asks for leave to amend his pleadings. (Docket Entry No. 13 at 17). Given the reasoning laid out in the text that follows above, amending his pleadings at this late date would not measurably alter the Court's adjudication.

omitted). With particular applicability to the instant case, the AEDPA confines both the nature and scope of federal habeas review.

The AEDPA "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in [28 U.S.C.] §§ 2254(d)(1) and (d)(2)." *Richter*, ___ U.S. at ___, 131 S. Ct. at 784. As previously mentioned, the Court of Criminal Appeals adjudicated Charles' *Strickland* claim on habeas review. This Court, therefore, can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law.'" *Berghuis v. Thompkins*, ___ U.S. ___, 130 S. Ct. 2250, 2258 (2010) (quoting 28 U.S.C. § 2254(d)(1)); *see also Thaler v. Haynes*, ___ U.S. ___, 130 S. Ct. 1171, 1174 (2010); *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Thus, the AEDPA serves as a "guard against extreme malfunctions in the state criminal justice systems," not as a vehicle for error correction. *Richter*, ___ U.S. at ___, 131 S. Ct. at 786 (citation omitted); *see also Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, ___ U.S. at ___, 131 S. Ct. at 786.

The AEDPA also controls this Court's review of factual questions. The AEDPA "overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). A federal habeas court must presume any underlying state factual findings to be correct, unless the petitioner "rebut[s] the presumption of correctness by clear and

convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003); *Smith*, 311 F.3d at 668. Under 28 U.S.C. § 2254(d)(2), "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented." *Miller-El*, 537 U.S. at 340.

A petitioner's compliance with 28 U.S.C. § 2254(d) does not entitle him to habeas relief. No Supreme Court case "ha[s] suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard[.]" *Horn v. Banks*, 536 U.S. 266, 272 (2002); *see also Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003) (finding that 28 U.S.C. § 2254(d) "does not require federal habeas courts to grant relief reflexively"). A habeas corpus petitioner meeting his burden under 28 U.S.C. § 2254(d) must still comply with 28 U.S.C. § 2254(a); he must show that "he is in custody in violation of the Constitution or laws or treaties of the United States." Thus, other jurisprudential doctrines, such as the harmless-error doctrine and the non-retroactivity principle, guide federal habeas review. Any trial error cannot form the basis for federal habeas relief unless it "ha[d] a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Robertson*, 324 F.3d at 304 (quoting *Brecht*, 507 U.S. at 629); *see also Aleman v. Sternes*, 320 F.3d 687, 690-91 (7th Cir.) ("Nothing in the AEDPA suggests that it is appropriate to issue writs of habeas corpus even though any error of federal law that may have occurred did not affect the outcome."), *cert. denied*, 539 U.S. 960 (2003). A habeas court likewise cannot grant relief if it would require the creation of new constitutional law. *See Horn*, 536 U.S. at 272 (relying on *Teague v. Lane*, 489 U.S. 288 (1989)).

Federal practice further limits review to those claims that an inmate presented in compliance with state procedural law. *See Dretke v. Haley*, 541 U.S. 386, 392 (2004); *Lambrix*

*v. Singletary*, 520 U.S. 518, 523 (1997); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  If an inmate fails to follow well-established state procedural requirements for attacking his conviction or sentence, and the state court thereby finds that he has defaulted consideration of any issues, a procedural bar forecloses federal adjudication.  *See Lambrix*, 520 U.S. at 523; *Coleman*, 501 U.S. at 732.  However, only "adequate and independent state law procedural grounds" can bar federal review.  *Haley*, 541 U.S. at 392-93; *see also Coleman*, 501 U.S. at 729 (stating that federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment").

## ANALYSIS

### I. State Due Course of Law, Federal Due Process, and Ineffective Assistance of Counsel

Terrell's first ground for relief has three components, each relating to the lost recordings: (1) the trial court should have granted the defense's motion to dismiss under state constitutional law; (2) the federal due process and equal protection clauses should have prevented Terrell's conviction based on the lost evidence; and (3) trial counsel provided ineffective representation by not lodging a sufficient objection to the lost recordings.

As an initial matter, Texas constitutional law does not create an actionable basis for federal habeas relief.  Terrell informs the Court that "[t]he major issue in this case is . . . whether [he] preserved error in the trial court by urging that the State[']s constitutional provision provided greater protection than the Federal counterpart."  (Docket Entry No. 2 at 5).  The limitations of federal review, however, prohibit the Court from answering the underlying questions of state law.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties *of the United States*."  *Estelle v.*

*McGuire*, 502 U.S. 62, 68 (1991) (emphasis added); *see also* 28 U.S.C. § 2254(a) (cabining federal relief to a "violation of the Constitution or laws or treaties of the United States"). This Court's role on habeas is not to review the application of state law. *See Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004) ( "[I]n our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law."). Whether or not the Texas constitution protected Terrell from the loss or destruction of evidence is beyond the scope of federal habeas review.[3]

Despite Terrill's emphasis on state law, his petition liberally raises a federal constitutional complaint that the prosecution failed to preserve the recordings of his police interview and the victim's photo identification. Generally, the government must preserve evidence that may play a significant role in the suspect's defense. *See California v. Trombetta*, 467 U.S. 479 (1984). Nevertheless, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); s*ee also United States v. Moore*, 452 F.3d 382, 388 (5th Cir. 2006) ("Absent a showing of bad faith, failure to preserve potentially useful evidence does not constitute a denial of due process."). Here, Terrell has not shown any malicious intent in the loss of the recordings. At trial, in fact, trial counsel counsel conceded that accident, not malicious intent, caused the loss.

Even if Terrill could show a constitutional deprivation in the failure to preserve the records, he must show that the absence of the recordings prejudiced his defense. Absent proof that the "evidence is material in showing [his] innocence," federal law affords Terrell no relief. *United States v. Thompson* , 130 F.3d 676, 686 (5th Cir. 1997). Terrell contends that the

---

[3] The state appellate court's invocation of its procedural law provides an independent basis to forgo federal consideration of Terrell's state-law claim. While Terrell makes several arguments to overcome the state procedural default, he has not shown a sufficient basis to allow federal review.

"videotape and audiotape that was missing would have provided crucial evidence in support of [his] defense of actual innocence[.]" (Docket Entry No. 2 at 10). While Terrell makes broad claims that the recordings would have supported his innocence, he has made no particular showing of what information therein would benefit his defense. *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional claim."). Indeed, he has not provided any indication that the content of the recordings – and most particularly that of his police interview – differed in any significant way from the trial testimony.

Moreover, substantial other evidence corroborated the information given about the lost recordings. In particular, the victim's trial testimony alone more-than-adequately provided the jury with a strong basis for his conviction. As the intermediate appellate court observed in its initial ruling:

> . . . the tapes were lost as the result of a mistake or negligence, and there is no evidence of any bad faith on the part of the officers or the prosecutor. At trial, Terrell's counsel conceded that there was no evidence of any intentional misconduct relating to the missing tapes. . . . The significance of Terrell's interview is minor, as Davis testified to its key exculpatory information—that Terrell had come to the police station to clear his name and had denied committing the offense. Also, Terrell's employer corroborated that facet; he said that on the occasion Terrell went to the police station, Terrell told him he needed to leave work and take care of an emergency because some people were spreading some untrue rumors about him. . . . As for the lost tape of the interview of [the victim] in which she identified Terrell in a photo lineup, that evidence is potentially significant, but its significance is tempered by the fact that Terrell's attorney adequately and effectively cross-examined [the victim]., impeaching her in several key areas. On the element of the importance of the missing tapes, we find that it weighs neither in favor of nor against a due course of law violation. . . . In this case, [the victim's] testimony alone was sufficient to support Terrell's conviction. The missing tapes were not critical to whether the State could establish Terrell's guilt beyond a reasonable doubt.

*Terrell*, 228 S.W.3d at 347-48 (citation omitted). Terrill has not shown any constitutional violation in the loss of the recordings.

Finally, Terrill faults trial counsel for not making an adequate objection to preserve error. A reviewing court must assess counsel's representation under the familiar standards established in *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Under *Strickland*'s two-pronged test, a criminal defendant's Sixth Amendment rights are "denied when a defense attorney's *performance* falls below an objective standard of reasonableness and thereby *prejudices* the defense." *Yarborough v. Gentry*, 540 U.S. 1, 3 (2003) (emphasis added); *see also Rompilla v. Beard*, 545 U.S. 374, 387 (2005); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

The state habeas court summarily denied Terrell's *Strickland* claim after finding no deficient performance or prejudice. Trial counsel moved for a mistrial based on the lost recordings, though the appellate court found that objection insufficient to preserve the specific argument that the Texas Constitution provided a broader protection than the Federal Constitution. Terrell has not shown that a reasonable attorney would have made a broader objection, that the trial court would have granted a mistrial on that basis, or that the loss of the recording amounted to a constitutional violation. For essentially the same reasons that Terrell has not shown a due process violation, his *Strickland* claim lacks merit. The deferential standards afforded by the AEDPA foreclose federal relief on this claim. *See* 28 U.S.C. § 2254(d)(1).

## II. Confrontation Clause

Terrell also argues that the loss of the recordings violated his rights under the Confrontation Clause. The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

against him." Terrell claims that the loss of the recordings deprived him of the opportunity to cross examine the declarants.[4]

Most of the statements Terrell complains about were his own. "[N]o clear authority exists for the proposition that the Sixth Amendment guarantees a right to 'confront oneself' at trial." *Torres v. Roberts*, 253 F. App'x 783, 787 (10th Cir. 2007); *see also Crawford*, 541 U.S. at 51 (stating that the Confrontation Clause applies to "witnesses against the accused"); 4 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 802.05(3)(d) at 802-25 (2d ed. 2005) (explaining "a party cannot seriously claim that his or her own statement should be excluded because it was not made under oath or subject to cross-examination"). Terrell, through legal counsel, could cross-examine Detective Davis about his statements or testify himself as to their contents. Even so, under traditional evidentiary principles the statements related by Detective Davis were not hearsay. *See* Tex. R. Evid. 801(e). The core concerns of the Confrontation Clause were not existent in this case because Terrell was in the courtroom and could explain many of the challenged statements. In addition, Terrell could, and did, question the victim about her identification of him.

At any rate, "Confrontation Clause errors [are] subject to . . . harmless-error analysis." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). When looking at potential error, federal courts

---

[4] Respondent argues that the state habeas court "implicitly adopted" the "State's Original Answer" which argued that "Terrell failed to raise this issue on direct appeal and that habeas corpus could not be used to litigate matters that could have been raised on direct appeal." (Docket Entry No. 13 at 19). The state habeas court's decision does not mention any procedural default, much less adopt the State's briefing as its ruling. "To preclude habeas review, a state court's reliance on a procedural bar must be clear and express." *Puckett v. Epps*, 641 F.3d 657, 665 (5th Cir. 2011). In the absence of a state court ruling "stating clearly and expressly that its decision is based on bona fide separate, adequate, and independent grounds . . . a federal court will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so." *Rocha v. Thaler*, 619 F.3d 387, 400 (5th Cir. 2010) (quotations omitted). Respondent has not shown that state procedural law precludes federal review.

>consider the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

*United States v. Edwards*, 303 F.3d 606, 623 (5th Cir. 2002) (quoting *Hafdahl v. Johnson*, 251 F.3d 528, 539-40 (5th Cir. 2001)).  Detective Davis' recitation of Terrell's police interview was brief and did not include much inculpatory information; her testimony amount to little more than the fact that Terrell denied committing the crime.  The complained-of statements were cumulative of other testimony, particularly relating to the victim's identification.  For the reasons previously mentioned, the victim's testimony alone provided a sufficient basis for a conviction beyond a reasonable doubt.  For those reasons, the state court's rejection of Terrell's confrontation clause claim was not contrary to, or an unreasonable application of, federal law.  See 28 U.S.C. § 2254.

## CERTIFICATE OF APPEALABILITY

Under the AEDPA, a prisoner cannot seek appellate review from a lower court's judgment without receiving a Certificate of Appealability ("COA").  *See* 28 U.S.C. § 2253(c). Terrell has not yet requested that this Court grant him a COA, though this Court can consider the issue *sua sponte*.  *See Alexander*, 211 F.3d at 898.  "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal." *Slack v. McDaniel*, 529 U.S. 473, 482 (2000).  A court may only issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Supreme Court has explained the standard for evaluating the propriety of granting a COA on claims rejected on their merits as follows: "Where a district court has rejected the

constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. On the other hand, a district court that has denied habeas relief on procedural grounds should issue a COA "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484; *Miller-El*, 537 U.S. at 336-38. Unless the prisoner meets the COA standard, "no appeal would be warranted." *Slack*, 529 U.S. at 484.

Having considered the merits of Terrell's petition, and in light of the AEDPA's standards and controlling precedent, this Court determines that a COA should not issue on any claims.

## CONCLUSION

The Court finds that Terrell has not shown that constitutional error infected his trial. For the reasons outlined above, the Court grants summary judgment in Respondent's favor, denies Terrell's federal habeas petition, and dismisses this case with prejudice.

SIGNED at Houston, Texas this 14th day of February, 2012.

_____
Kenneth M. Hoyt
United States District Judge